**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **VIRGINIA BISHOP,** *et al.* | : | |
| | : | |
| Plaintiffs, | : | **Case No. C2-05-cv-00003** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **LUCENT TECHNOLOGIES, INC.,** *et al.* : | | **Magistrate Judge Kemp** |
| | : | |
| Defendants. | : | |

<u>**OPINION AND ORDER**</u>

## I.  INTRODUCTION

This matter comes before the Court on a combined Motion to Dismiss filed by

Defendants Lucent Technologies, Inc. ("Lucent" or "the Company") and the Lucent Retirement

Income Plan (collectively, "Defendants").  For the reasons set forth herein, the Court **GRANTS**

Defendants' Motion to Dismiss.

## II.  BACKGROUND

### A. Facts

Because the matter before the Court is Defendants' Motion to Dismiss, the Court will

consider the facts in the light most favorable to Plaintiffs.  *McGee v. Simon & Schuster, Inc.*, 154

F. Supp. 2d 1308, 1310 (S.D. Ohio 2001).

On June 11, 2001, Lucent announced its 2001 Voluntary Retirement Program ("2001

VRP"), more commonly known at Lucent as the 5 + 5 Plan (the "Plan").  The Plan granted

eligible employees who voluntarily retired during a particular time period an additional five

years of service and an additional five years of age in calculating their pension eligibility and

-1-

determining whether an early retirement discount would apply to their benefits.

Virginia Bishop ("Bishop"), Gerald Deckard ("Deckard"), Charles Himmelspach, Jr. ("Himmelspach"), James Kastet ("Kastet"), Janet Koch ("Koch"), George Policello ("Policello"), Karen Staff ("Staff"), and Sharon Stratton ("Stratton") (collectively, "Plaintiffs") all retired or separated from their service at Lucent prior to Lucent's announcement of the 2001 VRP on June 11, 2001.  Plaintiffs explained that all Lucent employees had been notified that if they chose to retire on or before December 31, 2000, Lucent would contribute ninety percent (90%) of the "maximum company contribution" towards retiree health care coverage regardless of the employee's years of service.  A decision to retire on or before December 31, 2000 would, therefore, "lock in" Lucent's commitment to the retirees' health benefits.

Bishop, Deckard, Himmelspach, Koch, Policello, and Staff all allege that they spoke with Lucent management or Lucent human resources employees prior to their decision to retire in 2000.  Each was led to believe that Lucent would not offer a different retirement incentive package in the near future.  Bishop, Deckard, Kastet, Koch, Policello, and Staff also contend that they were told that if they did not retire prior to December 31, 2000, they could lose their health benefits.  Believing that no retirement incentive package would be offered in the future, Bishop, Deckard, Himmelspach, Kastet, Koch, Policello, and Staff all retired on or before December 31, 2000.

Stratton, on the other hand, retired from Lucent on June 28, 2001, after the 2001 VRP was announced.  Stratton was told that she was ineligible for the 2001 VRP, however, because she had volunteered to be severed from Lucent  in April 2001 under the Force Management Program ("FMP"), a severance program used by Lucent during periods of layoffs.  Prior to her

-2-

decision to volunteer for the FMP, Stratton alleges that she was told by Lucent officials that future retirement incentive packages would not be offered. She contends that she made her decision to enter the FMP based on the information that Lucent would not offer a future retirement incentive package.

Each Plaintiff alleges that Lucent assured them that a retirement incentive package would not be offered in the near future. Each Plaintiff also contends that had they known a future retirement package was remotely possible, each would have delayed retirement and would have accepted the 2001 VRP offer.

Lucent alleges that it assembled the June 2001 VRP on short notice, after several months of declining business, and on the heels of the termination of merger discussions that the Company had pursued. Lucent contends that it did not breach its fiduciary duty to Plaintiffs because the information given to Plaintiffs was accurate at the time it was conveyed.

### B. Procedural History

On February 8, 2005, Plaintiffs filed their amended complaint (the "Complaint") against Defendants. Plaintiffs assert that Defendants misrepresented the availability of future retirement packages at Lucent, and as such, Defendants breached their fiduciary duty of absolute loyalty to each Plaintiff under Section 404 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104.

Plaintiffs request various forms of relief in their Complaint. Specifically, Plaintiffs ask the Court to order Defendants to: (a) modify the Plan records of the Lucent Retirement Income Plan to show that Plaintiffs retired in full compliance with the terms and conditions of the Plan announced by Lucent on June 11, 2001; (b) ensure that Plaintiffs are provided the benefits of the

Plan announced on June 11, 2001; (c) pay for the interests on the benefits; and (d) pay for attorney's fees pursuant to ERISA § 502(g).

On March 14, 2005, Defendants collectively filed this Motion to Dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procure.  Defendants contend that Plaintiffs' claims fail because, among other things, they are barred by the statute of limitations.  On April 28, 2005, Plaintiffs filed a Response in Opposition to Defendants' Motion to Dismiss; Defendants replied on May 20, 2005.  Plaintiffs filed a Supplemental Memorandum Opposing Defendants' Motion to Dismiss on October 12, 2006, and Defendants submitted a reply on November 2, 2006. Accordingly, Defendants' Motion is now ripe for this Court's review.

### III.  STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of the complaint.  *Davis H. Elliot Co., Inc. v. Caribbean Utils. Co.,* 513 F.2d 1176, 1182 (6th Cir. 1975).  When considering such a motion, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all "factual allegations and permissible inferences therein." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Legal conclusions framed as factual allegations, however, are accorded no such presumption.  *Lewis v. ACB Bus. Serv., Inc.* 135 F.3d 389, 405 (6th Cir. 1998).  A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court's focus is on whether the plaintiff is entitled to offer evidence to support the claims, and not whether the plaintiff will ultimately prevail.  *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  As *Miller* instructs, "it

may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.*

A plaintiff need not include all of the particularities of the claims against the defendant in order to survive a 12(b)(6) motion. *Brooks v. Am. Broad. Co., Inc.,* 932 F.2d 495, 497 (6th Cir. 1991). Pursuant to the Federal Rules of Civil Procedure, the complaint need only set forth the basis of the court's jurisdiction, a short and plaint statement of the claim entitling the plaintiff to relief, and a demand for judgment. *See* FED. RULE. CIV. PRO. 8(a). A court will grant a motion for dismissal under 12(b)(6) only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Serv. v. Mental Health and Recovery Bd.*, 395 F. Supp. 2d 644, 649 (S.D. Ohio 2004).

## IV. ANALYSIS

Defendants ask this Court to dismiss Plaintiffs' claims because the Complaint was filed outside of the applicable statute of limitations.

### A. Statute of Limitations

The Employee Retirement Security Act ("ERISA") provides that retirement plan fiduciaries have certain obligations to plan participants. Specifically, 29 U.S.C. § 1104(a)(1), which governs fiduciary duties, provides in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely
>   in the interest of the participants and beneficiaries–
> (A) for the exclusive purpose of:
>     (i) providing benefits to participants and their beneficiaries; and
>     (ii) defraying reasonable expenses of administering the plan . . . .

*Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1161 (6th Cir. 1988); 29 U.S.C. §

1104(a)(1).

A fiduciary's "duty of loyalty" is codified in the requirement that "a fiduciary of a plan must act solely in the interest of the plan's participants and beneficiaries." *Berlin*, 858 F.2d at 1161; 29 U.S.C. § 1104(a)(1).  A fiduciary breaches this duty by providing plan participants with materially misleading information, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.  *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002).  Misleading communications to plan participants regarding plan administration (e.g., communications about eligibility or the extent of benefits under a plan) will support a claim for breach of fiduciary duty.  *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992).

A claim for breach of fiduciary duty under ERISA must be brought within the statute of limitations set forth in Section 413 of ERISA, 29 U.S.C. § 1113:

> No action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty or obligation . . . after ***the earlier*** of (1) six years after (A) the date of the last action which constituted a part of the breach or violation or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, ***or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach of violation***; except  that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation. 29 U.S.C. §1113 (2007) (emphasis added).

Because Plaintiffs filed their Complaint within five years – less than six years, but more than three years, after the 2001 VRP was announced – the issue before this Court is whether Plaintiffs had "actual knowledge" such that the applicable statute of limitations is three, rather than six, years.

The Sixth Circuit has determined that the "actual knowledge" required to trigger the

-6-

statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transactions that constitute the alleged violation. *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003). The *Wright* Court, adopting the standard of the Seventh, Ninth, and Eleventh Circuits, concluded that it is not necessary that the plaintiff also have "actual knowledge" that the facts establish a cognizable claim under ERISA in order to trigger the running of the statute of limitations.[1] *Wright*, 349 F.3d at 330; *see also Million v. Trustees of the Central States, Southeast & Southwest Areas Pension Funds*, 50 Fed. Appx. 196, 199 (6th Cir. 2002) (holding that it is not necessary for a potential plaintiff to have knowledge of every detail of a transaction, or knowledge of its illegality).

Plaintiffs claim that Lucent and the Company representatives misled them by representing that the Company would not offer future retirement incentive packages. Plaintiffs contend that in order for this Court to find that they had "actual knowledge" of Defendants' breach of fiduciary duty, thus triggering the running of the statute of limitations, Plaintiffs must have known all material facts necessary to understand that an ERISA fiduciary had been breached his or her duty. In other words, Plaintiffs contend that they would have had to know that Lucent's statements regarding future retirement packages were intentionally or negligently misleading at the time Lucent made them.

Plaintiffs' analysis runs contrary to the law established in *Wright* in which the Sixth Circuit determined that "actual knowledge" only requires Plaintiffs to know of the facts and

---

[1] The *Wright* Court specifically rejected the Second Circuit's standard for "actual knowledge." The Second Circuit found that a party has "actual knowledge" only when the party has knowledge of all material facts necessary to understand that an ERISA fiduciary breach has breached his or her duty or otherwise violated the Act. *Wright*, 349 F.3d at 328.

transactions that constitute a violation, not all material facts necessary to understand that a breach of fiduciary duty occurred.  In this case, Plaintiffs obtained "actual knowledge" on June 11, 2001, when Lucent announced its decision to offer a retirement incentive package, the 2001 VRP.  Plaintiffs allege that, prior to their decisions to retire, Lucent asserted that it would not offer future retirement incentive packages.  Relying on this information, Plaintiffs retired or separated from Lucent.  Lucent then announced that it was, in fact, offering a retirement incentive package on June 11, 2001 in the form of the 2001 VRP.  This announcement, which was widely disseminated in the national media,[2] directly contradicted the information Plaintiffs received prior to their decisions to retire.  Plaintiffs, therefore, had "actual knowledge" of the transactions that constituted the violation on June 11, 2001, when Lucent made its announcement.

Because Plaintiffs had "actual knowledge" under ERISA on June 11, 2001, Plaintiffs had to file their claims by June 11, 2004 in order to comply with the statute of limitations.  Plaintiffs filed their action on January 3, 2005, however, outside of the statute of limitations.

### B.  Tolling the Statute of Limitations

Plaintiffs contend that they are not barred by the statute of limitations because the statute was tolled while they exhausted their administrative remedies as required under ERISA.  A review of the case law, however, does not support Plaintiffs contention.

Section 1104 includes both a statute of limitations and a statute of repose.  Statutes that do so exclude the concept of equitable tolling.  *See, e.g.*, *Lampf, Pleva, Lipkind, Prupis &*

---

[2]*See, e.g.*, CNN.com, *Lucent offers buyouts*, June 6, 2001, available at http://archives.cnn.com/2001/BUSINESS/06/ 06/lucent; *Lucent to offer buyouts to 10,000 in U.S.,* Chicago Sun Times, June 7, 2001, p.59 (AP story), 2001 WLNR 4543675.

*Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (securities law); *Radford v. General Dynamics Corp.*, 151 F.3d 396 (5th Cir. 1998) (holding that 29 U.S.C. § 1113 is a statute of repose, establishing an outside limit of six years in which to file suit, and tolling does not apply); *In re Unisys Corp Retiree Medical Benefit "ERISA" Litig.*, 242 F.3d 497, 503-04 (3d Cir. 2001) (holding that superimposing equitable tolling rules on the statutory scheme set forth in § 1113 would be inconsistent with congressional intent and the clear holdings of the Supreme Court). Further, the language of § 1104 does not suggest that the statute of limitations is tolled while a party exhausts administrative remedies after obtaining "actual knowledge" of a breach of fiduciary duty other than where the case is one of fraud or concealment. *Ternes v. Tern-Farm, Inc.*, 904 F.2d 708, 1990 U.S. App. LEXIS 9723, *13 (6th Cir. 1990).

Plaintiffs also contend that they were required to exhaust their administrative remedies prior to filing this action. It is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim. *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir 2005); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1994). The Sixth Circuit, however, has not yet decided whether administrative remedies must be exhausted for claims based on a statutory right such as § 1104 fiduciary duty claims, prior to filing an action. *Hill*, 409 F.3d at 717. In addition, the Sixth Circuit also recognizes a general exception to the exhaustion requirement for ERISA claims when the remedy obtainable through administrative remedies would be inadequate or the denial of the beneficiary's claim is so certain as to make exhaustion futile. *Hill*, 409 F.3d at 718-19. A plaintiff can show futility when it is certain that the plaintiff's claim will be denied on appeal, not merely that there are doubts that an appeal will result in a different decision. *Hill*, 409 F.3d

at 719; *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998).  If exhausting administrative remedies would be futile, exhaustion of those remedies is not required and the plaintiff must bring his action within the applicable statute of limitations.

In this case, Plaintiffs assert a breach of § 1104 fiduciary duty claims against Defendant. First of all, there is no case law in this Circuit that suggests that Plaintiffs must exhaust administrative remedies prior to bringing their suit based on a statutory claim.  Additionally, Plaintiffs would not be required to exhaust their administrative remedies in this case because such action would be futile.  Here, an exhaustion of administrative remedies would require the Plaintiffs to request the Plan administrator to declare them eligible for the benefits available under the 2001 VRP.  The Plan administrator would be unable to accommodate Plaintiffs' request because the 2001 VRP was limited to those employees deemed eligible on June 11, 2001. Each Plaintiff was an ineligible employee on June 11, 2001.  Seven of the eight Plaintiffs were no longer employees; they had already retired.  The Plan administrator is required to follow the exact terms of the Plan when administering benefits.  29 U.S.C. § 1104(a)(1)(D).  If the Plan administrator were to give Plaintiffs the benefits of the 2001 VRP, the administrator would necessarily violate his or her duty.  Plaintiffs could not obtain a remedy through administrative remedies; to exhaust such remedies would have been futile and, therefore, not required prior to bringing their action.

Because Plaintiffs' Complaint was filed outside of the statute of limitations, and is not saved by tolling, Plaintiffs' claims are time-barred.

Defendants also state other arguments as to why Plaintiffs' Complaint fails to state a claim upon which relief can be granted.  Because Plaintiffs' Complaint is dismissed as barred by

the statute of limitations, this Court need not address such arguments.

## V. CONCLUSION

For the foregoing reason, Defendants' Motion to Dismiss is **GRANTED** on all counts and Plaintiffs' claims against Defendants are hereby dismissed.

**IT IS SO ORDERED.**

<u>**s/Algenon L. Marbley**</u>
**ALGENON L. MARBLEY**
UNITED STATES DISTRICT JUDGE

**DATED: March 15, 2007**